**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| **United States of America,** | Criminal No. 07-226 (PAM/JJG) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| **Kevin J. Morse,** | |
| Defendant. | |

The above-entitled matter came before the undersigned Magistrate Judge on October 5, 2007 for the pretrial motions of defendant Kevin Morse. Robert M. Lewis, Assistant United States Attorney, appeared for the Government. Jordan S. Kushner, Esq., appeared on behalf of Mr. Morse (Morse). Dispositive motions are referred for a report and recommendation in accordance with 28 U.S.C. § 636 and Local Rule 72.1(c).

By a motion to dismiss, Morse challenges the prosecution itself, for reasons of estoppel and for violations of due process (Doc. No. 34). Morse has two additional motions to dismiss that challenge the indictment. One is based on a formal defect, asserting that the indictment is fatally defective due to the absence of signatures (Doc. No. 42); the other alleges substantive problems, asserting that the indictment is improperly founded on hearsay evidence (Doc. No. 46).

Through a motion to suppress evidence from summonses (Doc. No. 40), Morse argues that the Internal Revenue Service violated its statutory summons authority. And by a motion to suppress statements (Doc. No. 44), Morse contends that statements were taken from him in

violation of due process, his privilege against self-incrimination, and his Sixth Amendment right to counsel. The issues raised by Morse's motions are as follows.

A.      **Dismissal for Estoppel, Violation of Due Process**

   1.      **Background**

The motion to dismiss for reasons of estoppel and for violations of due process arises out of a civil proceeding that occurred prior to the indictment in this matter. Through a petition for a writ of habeas corpus that Morse filed on January 24, 2003, Morse sought a declaration that his wages were not taxable.

Opposing the petition, the Government filed a declaration on March 28, 2003 by Susan Gedde, a records custodian at the IRS. She indicated that Morse had not filed income tax returns for the years of 1996 through 2000.

In a report on May 21, 2003, Magistrate Judge Jonathan Lebedoff cited the declaration. He then went on to recommend dismissal of the case for lack of subject matter jurisdiction. This recommendation was supported by three separate arguments, one being that Morse had not filed tax returns and thus could not sue for a refund. District Judge Joan Ericksen adopted the report, without further comment on the merits, and dismissed the case by an order on July 7, 2003.

The current prosecution is founded on charges that Morse filed false tax returns for the years of 1996 through 2000. So the charges contradict the Government's prior representation, in the 2003 civil litigation, that Morse did not file tax returns during those years. The Government counters that Morse filed his tax returns in late 2002, and due to delays in recordkeeping, the IRS did not know of the filings at the time of Gedde's March 2003 declaration. So it contends that its representation was not knowingly incorrect.

From these facts, Morse advances three arguments. One is that, because the Government made an inconsistent representation in a prior proceeding, the prosecution is barred by judicial estoppel. Another is that he relied on that representation to his detriment, conclusively showing entrapment by estoppel. And he contends that the representations of the Government amount to a violation of due process.

### 2. Judicial Estoppel

The doctrine of judicial estoppel may apply where a party makes a representation in one proceeding, but then makes a clearly inconsistent representation in a subsequent proceeding. If that party benefits from the representation in the prior proceeding, and an opposing party suffers a prejudicial effect from the reversal in the ensuing proceeding, then a court in its discretion may estop the representing party from changing its position. *United States v. Pellulo*, 399 F.3d 197, 222-23 (3d Cir. 2005); *United States v. Hook*, 195 F.3d 299, 306 (7th Cir. 1999).

As a threshold matter, it is not settled whether judicial estoppel may be applied against the Government in a criminal prosecution. But in the decision of *Heckler v. Community Health Servs. of Crawford County, Inc.*, the United States Supreme Court offered dictum that strongly disfavored the doctrine in this context:

> When the government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole is undermined.

467 U.S. 51, 60 (1984). It seems likely that if judicial estoppel applied in the criminal context, it would improperly interfere with law enforcement. The Eighth Circuit, among other circuits, has expressed similar sentiments. *See United States v. Grap*, 368 F.3d 824, 830 (8th Cir. 2004); *see also Nichols v. Scott*, 69 F.3d 1255, 1272 (5th Cir. 1995); *United States v. Kattar*, 840 F.2d 118, 129 n. 7 (1st Cir. 1988).

3

Morse counters there is precedent for the application of judicial estoppel in this context, relying chiefly on the decision of the U.S. Supreme Court in *New Hampshire v. Maine*. 532 U.S. 742 (2001). He correctly notes that the case involved judicial estoppel "against a government." But the case was a civil proceeding, a boundary dispute between two states. On the potential impact of this decision in other areas of law, the Court took care to recite *Heckler* and observed, "[T]his is not a case where estoppel would compromise a governmental interest in enforcing the law." *Id.* at 755. So *New Hampshire* does not support the application of judicial estoppel in a criminal prosecution.

Assuming for the sake of argument that the doctrine applies, there must be some showing of wrongdoing, such that representations of a party have undermined the integrity of the courts. *United States v. McCaskey*, 9 F.3d 368, 378-79 (5th Cir. 1993); *United States v. Levasseur*, 846 F.2d 786, 793 (1st Cir. 1988).

In the current prosecution, the Government argues its statement in the 2003 litigation was at best inadvertent, and not an effort to manipulate the court. This Court finds this explanation credible and consistent with the record. Because the Government offers a reasonable explanation for its change in position, it is not appropriate to apply judicial estoppel. *See United States v. Vastola*, 989 F.2d 1318, 1324-25 (3d Cir. 1993).

Another concern when examining judicial estoppel is the question of detrimental reliance. Without such reliance, it is not appropriate to apply the doctrine. *Hook*, 195 F.3d at 299.

The Government suggests that, because its prior representation was not material to the dismissal of the 2003 litigation, Morse had no reason for detrimental reliance. This contention is not entirely correct. Magistrate Judge Lebedoff reasoned in part that, because Morse filed no tax returns, there was no subject matter jurisdiction.

Nevertheless, the 2003 litigation was dismissed without prejudice, and it did not provide Morse with any guidance on the lawfulness of his tax returns. So Morse has no reason to claim, after the fact, that he had cause to rely on the representations of the Government at that time. He suffers no prejudice that would merit application of judicial estoppel here.

As indicated by the analysis beforehand, judicial estoppel may not allowed in criminal prosecutions. Even if it does, the circumstances strongly disfavor its use. And the decision to apply judicial estoppel is committed to the discretion of the court. *See Grap*, 368 F.3d at 831 (holding that district court did not abuse its discretion by refusing to dismiss an indictment on a theory of judicial estoppel). Pursuant to this discretion, judicial estoppel should not apply here.

3.   **Entrapment by Estoppel**

In a criminal prosecution, entrapment by estoppel is an affirmative defense. A defendant has the burden to show a government official made a statement; that based on this statement, the defendant believed his or her conduct was lawful; and that reliance on this belief was reasonable. *United States v. Patient Transfer Service, Inc.*, 413 F.3d 734, 742 (8th Cir. 2005).

Where there is conflicting evidence on the question of entrapment by estoppel, the issue is a fact question, which is submitted to the jury. *United States v. French*, 46 F.3d 710, 714 n. 6 (8th Cir. 1995). The record here has conflicting evidence on whether or not Morse had filed his tax returns by the time of the 2003 litigation.[1] This evidence may show, among other matters, whether his reliance on the Government's representations was reasonable.

---

[1] In the context of the arguments on judicial estoppel, this Court implicitly found that Morse filed tax returns in late 2002, but the filings were not reflected in IRS records by early 2003. But that finding does not control any facts to be put to proof before the jury at trial.

5

This record does not conclusively establish entrapment by estoppel, and therefore, it does justify dismissal. But this decision does not preclude Morse from pursuing this defense at trial, subject to any rulings by the district court.

**4.     Violation of Due Process**

Morse also contends that the contradictory statements of the Government constitute a violation of due process. To support this argument, Morse relies on cases where a prosecution is based on a theory involving a single actor, yet more than one person is prosecuted for that crime. Such a scenario, which the Eighth Circuit calls "contradictory prosecution," violates due process. *See Clay v. Bowersox*, 367 F.3d 993, 1004 (8th Cir. 2004); *United States v. Paul*, 217 F.3d 989, 998 (8th Cir. 2000).

Because there has been no previous prosecution for the charges against Morse here, the circumstances cannot show a violation of due process on a theory of contradictory prosecution. Otherwise, Morse has not offered other theories that would establish a violation of due process, nor are any evident. The prosecution, therefore, need not be dismissed on this basis.

**B.     Dismissal for Lack of Signed Indictment**

In his nondispositive motions, Morse asked that the Government be required to disclose a duly executed copy of the indictment for his inspection. This Court has denied the motion in a separate order, reasoning in part that Morse suffered no prejudice from nondisclosure. As noted then, a signed indictment exists and was filed under seal.

As the Government has not disclosed the signed indictment to Morse, he has a separate motion to dismiss this prosecution for lack of a signed indictment. The analysis on this question is essentially the same as that in this Court's order on nondispositive motions. The signatures on the indictment are a formality, and their absence from the public record causes no prejudice. *See*

6

*United States v. Willaman*, 437 F.3d 354, 360 (3d Cir. 2006); *United States v. Irorere*, 228 F.3d 816, 830 (7th Cir. 2000); *United States v. Curls*, 219 Fed.Appx. 746, 751 (10th Cir. 2007).

**C.      Dismissal Due to Substantive Errors in the Indictment**

The other challenge to the indictment mainly arises out of the fact that Morse testified before the grand jury.  Morse suggests he was not given an adequate opportunity to explain his conduct, implying that the grand jury was misled.  Morse separately argues that the indictment was improperly founded on hearsay evidence.  In both of these areas, Morse proposes that he be given a complete record of the grand jury proceedings, so he has an independent opportunity to evaluate the record.

**1.      Exculpatory Testimony**

The Government has no obligation to present exculpatory evidence before a grand jury. *United States v. Williams*, 504 U.S. 36, 52 (1992).  So if Morse did not meaningfully explain his position, or if the prosecuting attorney did not pursue examination that would allow Morse to do so, such concerns do not merit dismissal.

To the extent Morse implies that the prosecutor may have mischaracterized his testimony, the Eighth Circuit supplied the controlling standard in *United States v. Cady*.  It ruled,

> [A]bsent some evidence of gross deception by the prosecutor, an indictment legally valid on its face will not be overturned because it is possible to speculate that some of the evidence presented to the grand jury may have permitted an erroneous inference as to the accused.

567 F.2d 771, 776 (8th Cir. 1977).  Morse has not offered any evidence of gross deception.  Nor is it evident, from a review of his grand jury testimony, that the prosecutor did any deceptive act.  These concerns also do not merit dismissal.

### 2. Hearsay Evidence

Morse suggests that the indictment was improperly founded on hearsay evidence. But a defendant cannot challenge the adequacy or sufficiency of evidence in support of an indictment, *United States v. Nelson*, 165 F.3d 1180, 1882 (8th Cir. 1999), and an indictment may be entirely founded on hearsay evidence, *United States v. Neff*, 525 F.2d 361, 363 (8th Cir. 1975). So Morse cannot challenge the indictment on these grounds.

### 3. Disclosure of Grand Jury Proceedings

In connection with the prior arguments, Morse proposes that the grand jury transcript be disclosed to him, so he has an opportunity to substantiate his claims. Though Morse cites Rule 6(e)(3)(C) in support of this position, it appears he meant to invoke Rule 6(e)(3)(E), which provides in relevant part,

> The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter:
>
> (i) preliminarily to or in connection with a judicial proceeding; [or]
>
> (ii) at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury[.]

A court has substantial discretion to decide whether disclosure is appropriate under this rule. But this discretion must be based on the circumstances of each particular case, and the defendant has the burden to show a particularized need for such disclosures. *In re Grand Jury Investigation*, 55 F.3d 350, 354 (8th Cir. 1995).

When determining whether to release grand jury transcripts, a court considers the extent of the need for secrecy; the need for disclosure; and the extent to which the request is limited to matters "directly pertinent" to the need for disclosure. Where a defendant alleges improprieties

8

in witnesses' testimony before a grand jury, but the defendant can depose those witnesses about the substance of their testimony, it is not an abuse of discretion to deny disclosure of the grand jury transcripts.  *McAninch v. Wintermute*, 491 F.3d 759, 767 (8th Cir. 2007).  Furthermore, general allegations of defective grand jury proceedings are not sufficient to justify disclosure. *United States v. Warren*, 16 F.3d 247, 253 (8th Cir. 1994).

Setting aside any concerns about the need for secrecy, the analysis here hinges on the need for disclosure, and whether Morse properly tailored his request to meet this need.  In part, Morse complains about his own testimony.  As the preceding analysis indicates, these complaints have no merit and so they do not justify disclosure of the transcript.

Morse then goes on to imply that the prosecutor engaged in improper conduct.  But he does not explain this accusation, and even if it were true, his request is not limited to matters that are "directly pertinent" to this question.  This sort of general complaint cannot justify disclosure of the transcript.  *See Warren*, 16 F.3d at 253.

Morse also claims the indictment is founded on improper hearsay.  As noted beforehand, this is not a proper reason to challenge the indictment.  To the extent that the charges against him are founded on such hearsay, this concern is properly deferred to proof at trial, where Morse will have the opportunity to challenge the admissibility of evidence and cross-examine the witnesses against him.  *See McAninch*, 491 F.3d at 767.  Moreover, his general concerns about hearsay are nonspecific, yet his request arguably reaches all grand jury testimony.  For these reasons, it is not proper to order disclosure of the transcript.

**D.     IRS Summons**

   **1.     Background**

Turning to the suppression matters, Morse argues the IRS violated its statutory authority to issue certain summons, and so evidence from these summons must be suppressed. This matter arises out of summonses that the IRS served on two third parties, Robert Urbanski and Farmer's State Bank,[2] in October 2004.

The sole record about the summonses is an affidavit by Special Agent Chad Vetter of the IRS. In the affidavit, Vetter represents that he was among the officers who investigated Morse, but he does not explain how he acquired knowledge about the summons. The record also lacks any documentary evidence that would corroborate Vetter's affidavit.

Morse asserts two statutory violations in connection with these summonses. One is that he did not receive notice that third parties were being served as part of an investigation against him. According to Vetter, the IRS sent Morse notice of the summonses by certified mail, under its ordinary practice.

The other violation is that the parties were served after his investigation was referred to the Department of Justice for criminal prosecution. According to Vetter, the referral occurred on May 18, 2006, and the IRS did not issue summons after that date. Though Vetter does not state when the summonses were served, Morse represents in his moving papers that they were served in September and October 2004.

The statute at issue is 26 U.S.C. § 7602, which provides in relevant part,

---

[2] In his motion, Morse asserts that the third-party summonses were served on Urbanski and Quest Investigations (Quest). But the record only shows summonses to Urbanski and Farmer's State Bank. There is no indication the IRS issued a summons to Quest or otherwise investigated it in connection with its investigation of Morse. The following analysis accordingly focuses on Urbanski and Farmer's State Bank.

  (c) (1) . . . An officer or employee of the Internal Revenue Service may not contact any person other than the taxpayer with respect to the determination of a tax liability of such taxpayer without providing reasonable notice in advance to the taxpayer that [such] contacts . . . may be made. . . .

  (d) (1) . . . No summons shall be issued . . . with respect to any person if a Justice Department referral is in effect with respect to such person. . . .

    (2) . . . A Justice Department referral is in effect with respect to any person if—

     (i) the Secretary has recommended to the Attorney General a grand jury investigation of, or the criminal prosecution of, such person for any offense connected with the administration or enforcement of the internal revenue laws . . . .

As the text of the statute indicates, Morse's notice argument is founded on § 7602(c) and the referral argument is founded on § 7602(d).

  **2. Suppression as Remedy**

A threshold question here is, if a statutory violation did occur, whether suppression is the appropriate remedy. Of the two circuits to answer this question, both answer in the affirmative. *See United States v. Utecht*, 238 F.3d 882, 886-87 (7th Cir. 2001); *United States v. Genser*, 582 F.2d 292, 307-08 (3d Cir. 1978).

Other circuits have recognized that suppression may be the appropriate remedy in a criminal prosecution, without necessarily ruling to that effect. *See Weiss v. Commissioner*, 919 F.2d 115, 118 n. 5 (9th Cir. 1990); *United States v. Picciandra*, 788 F.2d 39, 45 (1st Cir. 1986); *United States v. MacKenzie*, 777 F.2d 811, 819 (2d Cir. 1985). Although the Eighth Circuit has yet to take a position, it has required suppression in other circumstances where the IRS misuses its authority. *United States v. Wadena*, 152 F.3d 831, 851 (8th Cir. 1998) (requiring suppression

where IRS audit is used to pursue a fraud investigation); *cf. United States v. Krauth*, 769 F.2d 473, 477 (8th Cir. 1985) (recognizing that, in a criminal prosecution, the defendant has the right to challenge validity of a previously executed summons). This Court concludes that, if Morse substantiates a violation, suppression is the appropriate remedy here.

### 3. Standard of Review

The next question is to determine, on a motion to suppress for violations of § 7602, what the legal questions are. Morse advances the standard the U.S. Supreme Court recited in *United States v. LaSalle National Bank*. 437 U.S. 298 (1978).

In that case, the Court emphasized that the IRS must exercise its summons authority in good faith. When determining good faith, a court considers several factors, which may include whether (1) the summons is relevant to a legitimate purpose; (2) the information sought is not already in the possession of the IRS; (3) the IRS complied with administrative rules; and (4) the summons is used to influence a collateral dispute. *Id.* at 313-14 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).

This standard is ordinarily applied in a civil proceeding where the IRS is asking a district court to enforce the summons. *See, e.g., United States v. Norwood*, 420 F.3d 888, 893-94 (8th Cir. 2005). But the standard also finds favor in criminal cases, including one from the Eighth Circuit. *See United States v. Picciandra*, 788 F.2d 39, 45 (1st Cir. 1986); *United States v. Barney*, 674 F.2d 729, 731 (8th Cir. 1982); *United States v. Genser*, 582 F.2d 292, 310 (3d Cir. 1978); *cf. United States v. Krauth*, 769 F.2d 473, 478 (8th Cir. 1985) (using good faith standard to review motion to dismiss, in criminal prosecution, based on improper IRS summons).

One other issue merits further comment. When the *LaSalle Bank* Court was examining whether the IRS was acting in good faith, the primary concern was whether the IRS was using a

summons solely to investigate criminal wrongdoing. At that time, such use of summons was unlawful under § 7602. *See* 437 U.S. at 313-14. It may be that, for this reason, the Government is concerned about the application of the *LaSalle Bank* standard.

Following the amendment of § 7602 in 1982, the IRS was no longer forbidden from using summons to conduct criminal investigations. The current language only forbids use of summons after the investigation is referred to the Department of Justice for criminal prosecution. *See, e.g., Norwood*, 420 F.3d at 893; *In re Application to Terminate Grand Jury*, 437 F.Supp.2d 266, 272 n. 6 (D.N.J. 2006). So when deciding if the IRS had a "legitimate purpose" for its summons, it is immaterial whether it was pursuing a civil or criminal investigation.

### 4. Burden of Proof

Another concern is the proof needed to put the summonses at issue, and once this burden is met, what proof is needed to suppress. Morse contends that Vetter's affidavit is insufficient and that the Government has the burden to show their legality.

As few cases discuss suppression of evidence from summons, even fewer have addressed the appropriate burdens of proof. The Seventh Circuit, however, provides some guidance in the decision of *United States v. Utecht*:

> As in all requests for . . . suppression of evidence, the defendant must first allege facts demonstrating that a hearing on the suppression issue is warranted and then at the hearing produce evidence that he or she is entitled to the relief sought. [A defendant] bears the burden of making a *prima facie* showing before the district court must hold a hearing to investigate whether the IRS abused its civil summons power.

238 F.3d 882, 887 (7th Cir. 2001). This ruling comports with Eighth Circuit law regarding what a defendant must do to obtain a hearing on a motion to suppress. *See United States v. Mims*, 812 F.2d 1068, 1073-74 (8th Cir. 1987) (quotation omitted).

13

Even though the preceding analysis concluded that *LaSalle Bank* and its progeny provide the appropriate standard of review, it is unclear whether the same may be said for the standard of proof. The *Utecht* ruling is persuasive because it is derived from the burden of proof required in other suppression motions.

A summons enforcement proceeding, by comparison, might have a more lenient burden of proof. The Government observes, from the Eighth Circuit case of *United States v. Norwood*, that it is sufficient for the IRS to make out a "minimal showing of good faith compliance with summons requirements," which may be shown through an affidavit of an IRS agent.[3] 420 F.3d 888, 892 (8th Cir. 2005). But this standard is not easily reconciled with the underlying standard to obtain a hearing on a motion to suppress, and so this Court declines to apply it.

Morse counters that an evidentiary hearing is required consistent with the decision of the Tenth Circuit in *United States v. Genser*. But that case did not address the appropriate burdens of proof. The court ruled that, because the district court had not allowed the defendant to pursue a suppression motion, a hearing would be required on remand. But the court did not necessarily require an evidentiary hearing in all circumstances. *See* 582 F.2d 292, 310 (3d Cir. 1978). So a hearing is not necessarily required here.

**5.     Statutory Violations**

Having set the procedural context, this Court now turns to the substantive questions about whether the IRS violated its summons authority. The first issue is whether Morse received due notice that summonses were being served to third parties. Where the record shows the taxpayer

---

[3] Though the Government sometimes argues against the use of civil summons enforcement cases in the context of a criminal suppression motion, it has apparently taken a contradictory position here.

was served with such notice by certified mail, there is sufficient notice and the requirements of § 7602(c) are met. *See United States v. Gillotti*, 822 F.Supp. 984, 987 (W.D.N.Y. 1993).

In his motion papers, Morse claims he did not receive notice. The Government responds with the affidavit by Vetter, who indicates such notice was sent by certified mail. This record is not enough to put the good faith of the IRS into issue, or to show that its summonses were not duly noticed as required under the statute.

The other issue is whether the summonses were served after this case was referred to the Department of Justice for criminal prosecution. On this issue, Vetter states that the referral was made in May 2006, and that the summonses were served before then. Morse does not contradict this account, and in his motion papers, he claims the summonses were served in late 2004. Once again, this record does not put the good faith of the IRS into issue, and there is no indication that the summonses were served after the referral.

As Morse has not offered prima facie evidence that the IRS abused its summons power, there is no need for hearing on his motion to suppress evidence from summons. The record does not indicate any failure of good faith by the IRS or any violation of the applicable statute. For this reason, his motion to suppress evidence from summonses is properly denied.

**E.     Statements**

In his remaining motion, Morse seeks to suppress two statements. One is an interview taken by IRS agents in September 2004. The other is his testimony before the grand jury that ultimately issued the indictment against him in this matter.

1.     **September 2004 Interview**

Vetter interviewed Morse at his home in September 2004.  Special Agent John Tschida, also of the IRS, testified about a report that Vetter prepared shortly after the interview.  Morse has not offered evidence to contradict this testimony, which indicates the following.

The interview took place outdoors, near his house, at a picnic table.  Before asking substantive questions, Vetter read an advice-of-rights card that IRS agents ordinarily use for noncustodial interviews.  That card states in relevant part,

> In connection with my investigation of your tax liability . . . I would like to ask you some questions.  However, first I advise you that under the 5th Amendment to the Constitution of the U.S., I cannot compel you to answer any questions or to submit any information if such answers or information might tend to incriminate you in any way.  I also advise you that anything which you say . . . may be used against you in any criminal proceeding which may be undertaken.  I advise you further that you may, if you wish, seek the assistance of any attorney before responding.

Morse indicated that he understood his rights and he agreed to talk.

During the interview, Morse did not express stress or discomfort, and he did not request that the interview be stopped.  Vetter described the encounter as "cordial."  He did not display weapons, threaten arrest, or engage in coercive conduct.  The interview continued for about two hours.  Morse argues that this statement was taken in violation of due process and of his Fifth Amendment privilege against self-incrimination.

To establish a violation of due process, Morse must demonstrate that officers engaged in coercive conduct sufficient to overcome the free will of the defendant.  *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004).  There is no indication of such conduct here.

For the Fifth Amendment privilege against self-incrimination to attach, the accused must be in custody.  A defendant is in custody when that defendant is formally arrested or is restrained

to a degree comparable to a formal arrest. *California v. Beheler*, 463 U.S. 1121, 1125 (1983). To determine whether restraint is comparable to formal arrest, the issue is whether a reasonable person, under similar circumstances, would have understood the situation to be an arrest. *United States v. Martinez*, 462 F.3d 903, 908-09 (8th Cir. 2006).

Although many factors may influence whether a particular police encounter is equivalent to arrest, *United States v. Black Bear*, 422 F.3d 658, 662-63 (8th Cir. 2005), the main concern is whether the defendant would be able to depart the scene, *United States v. LeBrun*, 363 F.3d 715, 720 (8th Cir. 2004). It is plain from the record here that Morse was not restrained, certainly not to a degree approaching formal arrest, and he was free to end the interview if he wanted. The privilege against self-incrimination did not attach, and so no violation of that privilege occurred.

### 2.      Grand Jury Testimony

Morse testified before a grand jury on June 26, 2007. That grand jury ultimately returned the indictment that led to his prosecution here. According to the record of his testimony, Morse was not compelled to appear before the grand jury, and instead he voluntarily appeared. Before proceeding with questioning, the prosecuting attorney gave Morse this advice of rights:

> [T]he grand jury is conducting an investigation of possible violations of federal criminal laws including tax laws by yourself. You may refuse to answer any question if a truthful answer to a question would tend to incriminate you. Anything you do or say may be used against you by the grand jury or in a subsequent legal proceeding.
>
> If you have retained counsel, the grand jury will permit you a reasonable opportunity to step outside the grand jury room to consult with counsel if you so desire.

When the prosecuting attorney first asked Morse if he understood his rights, Morse responded,

> Yes, I understood that I could have had an attorney to represent me, but my attorney was denied to meet with the IRS. You know,

17

> back when we talked about that, so that's I guess the reason that I
> don't have one.

The significance of this purported denial is not evident, and Morse did not explain why this prior incident kept him from retaining counsel for his testimony before the grand jury. Morse went on to state that he understood his rights, and the prosecuting attorney often reiterated to Morse that he had no obligation to testify.

Morse argues that this statement was taken in violation of his Fifth Amendment privilege against self-incrimination and his Sixth Amendment right to counsel. He generally contends that the prosecuting attorney did not properly advise him of his right to counsel.

The Fifth Amendment privilege definitely applies to grand jury proceedings: a witness before a grand jury cannot be compelled to answer self-incriminating questions. *See In re Grand Jury Subpoena*, 97 F.3d 1090, 1093 (8th Cir. 1996). But the Fifth Amendment rights associated with testimony before a grand jury are different from those associated with the *Miranda* warning, which only attach during custodial interrogation.

A grand jury proceeding does not involve the same compulsion as a police interview. So concerns about custodial interrogation, which merit the right to counsel and a *Miranda* warning about that right, do not apply. For this reason, a prosecuting attorney has no obligation to give a *Miranda* warning, or advise of a right to counsel, before taking testimony from a witness before a grand jury. *See Grand Jury Subpoena*, 97 F.3d at 1093; *United States v. Myers*, 123 F.3d 350, 355-56 (6th Cir. 1997); *see also United States v. Mandujano*, 425 U.S. 564, 579 (1976) (plurality opinion).

Although such a witness has no right to counsel before the grand jury itself, *United States v. Smith*, 522 F.2d 257, 261 (8th Cir. 1977), as a procedural matter, Eighth Circuit courts permit the witness to retain counsel outside the proceeding for consultation as needed, *In re Grand Jury*

*Subpoena*, 739 F.2d 1354, 1357 (8th Cir. 1984). Morse was accurately advised about this right, even if the prosecuting attorney evidently had no obligation to do so. But neither this right nor the corresponding advisory is material to Morse's privilege against self-incrimination. Because the record does not otherwise indicate a violation of the privilege, his statement before the grand jury need not be suppressed for this reason.

The Sixth Amendment right to counsel does not attach until the formal commencement of criminal proceedings against the accused. *See Scott v. United States*, 473 F.3d 1262, 1264 (8th Cir. 2007). This right to counsel does not attach, therefore, prior to an indictment in proceedings before a grand jury. *United States v. Gouviea*, 467 U.S. 180, 188-89 (1984). So this right cannot supply grounds to suppress either.

F.     **Conclusion and Recommendation**

Regarding any purported inconsistent statements by the Government, there is no violation of due process, or any application of principles of estoppel, that require dismissal. The absence of a signed indictment from the formal record does not merit dismissal. As there is no indication that the indictment is founded on gross deception, and because Morse cannot otherwise challenge the evidence underlying the indictment, dismissal is not proper on these grounds either.

Morse has not offered prima facie evidence that the IRS exercised its summons power in bad faith, and so evidence from summonses need not be suppressed. Where his statements are at issue, there is no violation of due process, the privilege against self-incrimination, or the Sixth Amendment right to counsel that justifies suppression. For these reasons, and consistent with the preceding analysis, this Court concludes that Morse's dispositive motions should be denied.

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

1.  Morse's motion to dismiss for reasons of estoppel or for violations of due process (Doc. No. 34) be **DENIED.**

2.  Morse's motion to dismiss for lack of a signed indictment (Doc. No. 42) be **DENIED.**

3.  Morse's motion to dismiss the indictment, or in the alternative, for disclosure of the grand jury proceedings (Doc. No. 46) be **DENIED.**

4.  Morse's motion to suppress evidence from summonses (Doc. No. 40) be **DENIED.**

5.  Morse's motion to suppress statements (Doc. No. 44) be **DENIED.**

Dated this 24th day of October, 2007.

    s/ Jeanne J. Graham
JEANNE J. GRAHAM
United States Magistrate Judge

**NOTICE**

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **November 7, 2007**.  A party may respond to the objections within ten days after service thereof.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The district court judge shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall forfeit review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.